IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KELLY C.,                              )
                                       )
           Plaintiff,                  )
                                       )
    v.                                 )  1:23CV956
                                       )
LELAND DUDEK,                          )
Acting Commissioner of Social Security,)
                                       )
           Defendant.                  )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kelly C. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on July 27, 2020, alleging a disability onset date of March 1, 2019 in both applications. (Tr. at 20, 309-22.)[1] Her applications were denied initially (Tr. at 92-141, 170-76) and upon reconsideration (Tr. at 142-69, 182-89). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 190-92.) On January 31, 2023, Plaintiff, along

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #3].

with her non-attorney representative, attended the subsequent online video hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 20.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 34), and on May 25, 2023, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 6-11).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

Case 1:23-cv-00956-JEP    Document 12    Filed 03/27/25    Page 3 of 18

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that, although Plaintiff worked after her alleged disability onset date, this work did not rise to the level of "substantial gainful activity." The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 23.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> status-post right ankle fracture with reconstruction, degenerative disc disease of the cervical and lumbar spine, obesity, major depressive disorder, and panic disorder without agoraphobia[.]

(Tr. at 23.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 23-25.) The ALJ therefore assessed Plaintiff's RFC and determined that she could perform light work with the following, addition limitations:

> [Plaintiff can] lift and carry twenty pounds occasionally and ten pounds frequently. She can stand and/or walk, with normal breaks, for six hours in an eight-hour workday; and she can sit, with normal breaks, for six hours in an eight-hour workday. She [can] frequently push or pull with the right lower extremity. [Plaintiff can] frequently climb ropes and stairs; occasionally . . . climb ladders, ropes, and scaffolds; and frequently . . . balance on level, even

5

> ground. She can tolerate occasional exposure to unguarded, moving, mechanical parts and unprotected heights. [Plaintiff] can understand, remember, and carry out simple, one-to-three-step instructions and tasks; and she can maintain attention and concentration for two-hour periods to complete an eight-hour workday and forty-hour workweek. She [can] frequently . . . interact with coworkers, supervisors, and the general public; and she can adapt to occasional workplace changes.

(Tr. at 25-26.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 32.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 33.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 34.)

Plaintiff now raises two challenges to the ALJ's decision. First, she contends that the ALJ "erred by failing to apply the correct legal standards when evaluating Plaintiff's psychological impairments and formulating the RFC." (Pl.'s Br. [Doc. #10] at 4.) In particular, she challenges the ALJ's analysis of her treatment records and mental status examinations in evaluating her depression and panic disorder. Second, Plaintiff argues that the ALJ "failed to identify and provide a reasonable explanation resolving the conflict between the testimony of the VE and the DOT regarding the frequency of changes involved in the jobs cited at Step Five of the [sequential evaluation process]." (Pl.'s Br. at 7.) After a thorough review of the record, the Court finds that neither of these contentions merit remand.

A. Subjective symptom analysis

Plaintiff first argues that the ALJ erred in her evaluation of the limiting effects of Plaintiff's psychological disorders—depression and panic disorder—on her ability to work. In

particular, Plaintiff contends that the ALJ erroneously relied on "'normal' objective medical evidence" when evaluating the consistency of Plaintiff's testimony. (Pl.'s Br. at 5.)

When evaluating a claimant's symptoms, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling ("SSR") 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. §§ 404.1529, 416.929. In Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95.

In Arakas, 983 F.3d at 97, the Fourth Circuit further explained that some conditions, such as fibromyalgia, simply do not manifest themselves in objective signs and symptoms.

983 F.3d at 97. Several years later, in Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 361-62 (4th Cir. 2023), the court extended the reasoning in Arakas to include psychological impairments, and depression in particular. Because the symptoms of both fibromyalgia and depression were "'entirely subjective,'" the ALJs in these cases erred by "requiring that [the claimants'] subjective statements be validated by objective medical support." Shelley C., 61 F4th at 361-62 (quoting Arakas, 983 F.3d at 96).

Plaintiff now argues that the ALJ in the present case also improperly relied on objective evidence to discount Plaintiff's subjective statements. However, in this case, the ALJ did not require that Plaintiff's subjective statements be validated by objective tests or reports. Instead, the ALJ's decision reflects that the ALJ considered all of the testimony and the record as a whole, and concluded that "statements concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 26-27.) In making this finding with regard to Plaintiff's mental impairments, the ALJ first addressed the "Paragraph B" criteria:

> State agency psychological consultant Jennifer Fulmer Ph.D. reviewed the available evidence on 03/23/2021 and assessed the claimant with a marked limitation in her ability to concentrate, persist, and maintain pace, and with mild limitations in all other paragraph B criteria (Ex. 3A, 4A). Upon a request for reconsideration, state agency psychological consultant Keith Noles Ph.D. reviewed the evidence on 08/26/2021 and assessed the claimant with moderate limitations in her ability to maintain concentration, persistence, and pace, and to adapt or manage oneself. He assessed mild limitations in the claimant's ability to interact with others and to understand, remember, and apply information (Ex. 7A, 8A). The undersigned finds that Dr. Noles' assessment is consistent with the following evidence.
>
> In understanding, remembering, or applying information, the claimant has a mild limitation. She testified that she has problems with her memory, and she stated in her adult function report that she needs reminders to take her medications. She also reported, however, that she can follow written

8

instructions, manage finances, and prepare simple meals (Ex. 6E). In addition, her neurologist documented intact memory with no cognitive impairment (Ex. 3F, 9F, 12F), and mental health providers consistently noted normal memory (Ex. 4F, 5F, 11F). This evidence indicates that the claimant can understand, remember, and carry out simple, one-to-three-step instructions.

In interacting with others, the claimant has a mild limitation. She alleged in her adult function report that she does not attend social activities regularly but said that she tries to spend time with family and occasionally attends church (Ex. 6E). The claimant testified that she panics in social situations. Although mental health providers documented anxious and depressed mood and affect, they regularly described the claimant as cooperative. In addition, she consistently reported that her panic symptoms were controlled with medications (Ex. 4F, 5F, 11F). The claimant exhibited a solemn mood and a flat affect when examined by Dr. Sims (Ex. 7F) but demonstrated normal mood, affect, and behavior when treated by primary care provider nurse practitioner (NP) Kimberly Donze (Ex. 8F). Based on the evidence, the claimant can interact frequently with coworkers, supervisors, and the general public.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. She alleged that she can pay attention only fifteen to thirty minutes (Ex. 6E), and she testified that she has poor concentration. Although mental health providers noted that she was distracted through March 2019, psychiatric mental health nurse practitioner (PMHNP) Sugaree Ganzman noted on 12/09/2019 that the claimant exhibited coherent, logical, and appropriate thought process and described her concentration as adequate (Ex. 4F at p. 25). The claimant continued to demonstrate adequate concentration through 09/12/2022 (Ex. 11F at p. 4). In addition, neurologist Robert Snyder M.D. noted normal attention and concentration (Ex. 3F, 9F, 12F). Consequently, the claimant can maintain attention and concentration for two-hour periods to complete an eight-hour workday and forty-hour workweek.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. She alleged no difficulty with self-care but reported that she does not react well to stress or to changes in her routine (Ex. 6E). The claimant was described as poorly groomed and disheveled by her mental health provider on 02/07/2018 (Ex. 4F at p. 178), and Dr. Sims noted that she was disheveled with dirty clothes and poor hygiene (Ex. 7F). In contrast, Dr. Snyder described the claimant as well-groomed on 08/23/2019 (Ex. 3F at p. 6), and mental health providers documented no deficits in dress, grooming, or hygiene after 02/07/2018 (Ex. 4F, 5F, 11F). Beginning on 09/21/2021, PMHNP Ganzman began noting that the claimant was making unrealistic decisions (Ex. 11F), but Dr. Snyder documented no deficits in insight or judgment (Ex. 9F, 12F). Prior to September 2021, providers consistently noted normal insight and judgment

9

> (Ex. 2F, 3F, 4F). The claimant is able, therefore, to adapt to occasional workplace changes.
>
> . . . .
>
> There is no evidence of marginal adjustment, defined as the minimal capacity to adapt to changes in the claimant's environment or to demands not already part of her daily life. Instead, the claimant has reported that she can operate independently with such daily tasks as grooming, cleaning, shopping alone, and helping her father care for her niece and nephew. She routinely drives alone, works part-time, and shops for her boyfriend (Exhibit 6E, testimony).

(Tr. at 24-25.) The ALJ thus relied on multiple factors in determining the impact of Plaintiff's mental impairments on her ability to function, including the opinion of the state agency psychological consultant Dr. Noles, Plaintiff's reported activities including her own reports of her ability to follow written instructions, manage finances, prepare simple meals, care for herself, spend time with family, attend church, shop for herself and her boyfriend, drive, care for her niece and nephew, and work part-time, as well as Plaintiff's reports regarding the effectiveness of medications and the assessments by Plaintiff's treating providers of the impact of her impairments on her functioning and their observations during her appointments.

Likewise, in setting the RFC, the ALJ's analysis included the longitudinal psychiatric treatment record, the opinions of the State agency psychological consultants, and Plaintiff's own statements and reports. (Tr. at 29-32.) As part of the process, the ALJ recounted and considered at length the testimony and other statements provided by Plaintiff. As set out in the administrative decision, Plaintiff completed an adult function report in which she reported the following mental limitations:

> [Plaintiff] alleged difficulty sleeping due to racing thoughts and said that she needs reminders to take her medication. She reported that she can follow written instructions, but oral directions sometimes need to be repeated. She stated that she does not attend social activities regularly; but she tries to spend time with family, runs errands, shops for groceries, and occasionally attends church. [Plaintiff] alleged that she can pay attention only fifteen to thirty

> minutes but said that she can drive, manage her finances, run errands, and
> follow instructions. She reported that she does not react well to stress or to
> changes in her routine.

(Tr. at 26) (citing Tr. at 385-395). At her hearing, Plaintiff further "stated that she has poor memory and concentration, and she panics in social situations. She also said that she socializes only with her family and her boyfriend." (Tr. at 26.) However, the ALJ also noted that Plaintiff reported that she often does her boyfriend's grocery shopping for him because "he has really bad social anxiety." (Tr. at 25, 26, 78.) She also routinely helped her father care for sister's children, ages 9 and 14. (Tr. at 25, 30, 79.) Most notably, the ALJ noted that Plaintiff worked part-time throughout the time period at issue as a home health aide. (Tr. at 23, 25, 30, 31, 56-57, 921, 1173, 1178, 1183, 1188, 1193.) Plaintiff described this work as rewarding (Tr. at 921), and reported to her psychiatric nurse practitioner, Sugaree Ganzman, in September 2021, that she would like to increase her workload and take on more patients. (Tr. at 1193; see also Tr. at 57.)[4] The ALJ further noted that Plaintiff's allegations of panic attacks in social situations were inconsistent with her own statements to her providers, in which "she consistently report[ed] that panic symptoms [were] controlled with medications." (Tr. at 31; see also Tr. at 30, 24, 904, 910, 921, 1183, 1188, 1198, 1203.)

When assessing the extent to which mental limitations restrict Plaintiff's ability to work, the ALJ also considered the assessments provided by Plaintiff's treating providers on examination. The ALJ found, for example, that Plaintiff's "reports of poor memory and concentration [were] inconsistent with universal evidence of normal memory and typically

---

[4] At the hearing, Plaintiff testified that she did not believe she could do this job full time because of her physical impairments, although she also noted ongoing issues with forgetfulness. (Tr. at 57-59, 70-71.)

11

normal attention, concentration, judgment, and insight, despite depressed or anxious mood and affect." (Tr. at 31, 30, 859, 877, 880, 915, 920, 925, 973, 1078-79, 1102, 1141, 1145, 1179, 1204.) In addition, the State agency psychological consultants considered the evidence in the context of the entire record when positing their opinions. As set out in the administrative decision,

> Jennifer Fulmer Ph.D, reviewed the available evidence on 03/23/2021 and found that [Plaintiff] can understand and remember simple instructions and can sustain concentration for simple tasks. [Dr. Fulmer] stated that [Plaintiff] is capable of maintaining socially appropriate behavior. Upon a request for reconsideration, state agency psychological consultant Keith Noles Ph.D. reviewed the evidence on 08/26/2021 and [concurred] with Dr. Fulmer's findings[,] except that he added that [Plaintiff] can adapt to low demand, low stress work and [can handle the] social demands [required to perform] simple, routine, repetitive tasks.

(Tr. at 31, 112-15, 128-29, 135-38, 146-48, 152-54, 161, 165-67.) In making his findings, Dr. Noles further noted that an "[o]verall review of the [record] suggests [Plaintiff's] mental condition is largely secondary to multiple situational stressors including chronic pain and family responsibilities." (Tr. at 167.) The ALJ found the consultants' opinions persuasive and utilized them when formulating Plaintiff's RFC. (Tr. at 26, 31.)

Plaintiff makes no specific objections to the mental RFC limitations included in this case,[5] nor does she suggest the need for additional limitations. Plaintiff's sole contention is that the ALJ erred by considering objective medical evidence <u>at all</u> when assessing her restrictions stemming from her depression and panic disorder. However, Fourth Circuit precedent does not direct factfinders to <u>ignore</u> evidence of a treating provider's assessments

---

[5] To the extent Plaintiff contends the limitation to "occasional workplace changes" conflicts with the jobs identified at Step Five of the sequential analysis, the Court addresses this argument in subsection B of this Opinion.

12

on examination when formulating an RFC, and here the ALJ specifically considered all of "the medical evidence and other evidence in the record" (Tr. at 27), including Plaintiff's reports of symptom control with medication, her ongoing part-time work as a caregiver for elderly patients, and the assessments of her functioning by her treating providers (Tr. at 31). See Clifford E. v. O'Malley, No. 1:23CV704, 2024 WL 3105669, at *9-10 (M.D.N.C. June 24, 2024); Mary W. v. O'Malley, No. 1:23CV128, 2024 WL 1256268 at *11-12 (M.D.N.C. March 25, 2024); Lasharne W. v. Commissioner, Soc. Sec. Admin., No. SAG-21-2603, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023); Anthony P. v. O'Malley, No. 1:22CV291, 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024) ("[T]he ALJ in this case did not dismiss [the plaintiff's] subjective complaints based entirely upon the belief that they were not corroborated by the medical evidence; nor did the ALJ require that [the plaintiff's] subjective statements be validated by objective medical support. Rather, in assessing [the plaintiff's] subjective complaints, the ALJ considered [the plaintiff's] ability to complete . . . myriad . . . daily activities, [his] own statements about his condition, and [his] treating provider's observations of [the plaintiff's] functioning. Fourth Circuit precedent does not suggest that ALJs should ignore objective evidence such as this; instead, Shelley C. and Arakas prevent ALJs from requiring claimants to provide medical evidence that would be impossible to produce given their specific medical conditions. The ALJ weighed the [plaintiff's] subjective complaints appropriately under those holdings and did not impose undue demands.").

      Contrary to Plaintiff's contentions, the ALJ in the present case did not require that Plaintiff's complaints of debilitating mental symptoms be validated by objective medical evidence. Rather, in accordance with 20 C.F.R. §§ 404.1529 and 416.929, SSR 16-3p, and

relevant case law, the ALJ considered the medical evidence, including the assessments by Plaintiff's treating providers upon examination, as one of many factors when evaluating her subjective complaints, and the ALJ also specifically noted and relied on the opinion of state agency psychologist Dr. Noles, Plaintiff's own reports of her ability to follow written instructions and manage finances, Plaintiff's own reports that her panic symptoms were controlled with medications, Plaintiff's activities including spending time with family, helping watch her young niece and nephew, driving, and shopping for herself and her boyfriend, and her ongoing part-time work as a home health aide for the elderly. The ALJ reviewed the evidence, explained her decision, and clearly explained the reasons for her determination. That determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand.

B. DOT Conflict

Plaintiff next contends that at step five of the sequential process, in evaluating whether sufficient other work exists in the national economy, the ALJ failed to identify and obtain a reasonable explanation for apparent conflicts between the testimony of the vocational expert and the Dictionary of Occupational Titles ("DOT"). In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit explained the ALJ's obligation at step five:

> To answer this final question—whether sufficient other work exists for the claimant in the national economy—the ALJ "rel[ies] primarily" on the Dictionary. Soc. Sec. Admin., Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, Social Security Ruling (SSR) 00–4p, 2000 WL 1898704 (Dec. 4, 2000), at *2 (the Ruling). The ALJ "may also use" a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy. Id.

> Because the expert's testimony can sometimes conflict with the Dictionary, the Social Security Administration has promulgated a multi-page, formal ruling to "clarif[y the] standards for the use of vocational experts" at ALJ hearings. Id. at *1. The Ruling requires that the ALJ "inquire, on the record, ... whether" the vocational expert's testimony "conflict[s]" with the Dictionary, and also requires that the ALJ "elicit a reasonable explanation for" and "resolve" conflicts between the expert's testimony and the Dictionary. Id. at *2. The ALJ must, by determining if the vocational expert's explanation is "reasonable," resolve conflicts "before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled." Id.

Pearson, 810 F.3d at 207-08. In Pearson, the Fourth Circuit thus clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the express language of the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

Here, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified jobs. Specifically, the ALJ identified three representative jobs available in the national economy that Plaintiff could perform:

- Office Helper (DOT 239.567-010, 1991 WL 672232),
- Mail Clerk (DOT 209.687-026, 1991 WL 671813), and
- Marker (DOT 209.587-034, 1991 WL 671802).

(Tr. at 33.) Plaintiff argues that, because these jobs require a Reasoning Level of 2 on the DOT's six-level scale, they reflect an apparent conflict with the ALJ's finding that Plaintiff "can adapt to occasional workplace changes." (See Tr. at 26.) Plaintiff contends that her limitation to "occasional workplace changes" precludes her from performing jobs above Reasoning Level 1, the lowest level available. In pertinent part, a job rated at Reasoning Level 1 requires the worker to "[d]eal with standardized situations with <u>occasional</u> or no variables in or from the situations encountered on the job." U.S. Dept. of Labor, DOT, App. C, available at 1991 WL 688702 (emphasis added). In comparison, a job rated at Reasoning Level 2 requires the worker to "[d]eal with problems involving a few concrete variables in or from standardized situations." <u>Id.</u> Plaintiff now argues that the ALJ's use of the word "occasional" would limit Plaintiff to Reasoning Level 1 jobs, and creates an apparent conflict with Reasoning Level 2. Defendant, in turn, counters that the term "occasional" in the present case qualifies workplace changes, rather than situations or tasks. As such, Defendant asserts that the term is not determinative under the relevant case law.

In considering this contention, the Court finds persuasive the recent decision of the Ninth Circuit in <u>Stiffler v. O'Malley</u>, 102 F.4th 1102 (9th Cir. 2024). In that case, the court offered the following rationale for finding no apparent conflict between a limitation to "few workplace changes" and jobs with a Reasoning Level of 2:

> [T]his case turns on the distinction between limitations in the workplace environment, and limitations on the tasks performed. Contrary to [the plaintiff]'s proposition, there was no conflict between [her] limitation of "few workplace changes" and inclusion of "the ability to deal with problems involving few concrete variables" in Reasoning level 2. The capacity to "deal with problems involving a few concrete variables in or from standardized situations," identified in Reasoning Level 2, refers to the "situational variables" that may arise when performing an assigned <u>task</u>. <u>Zavalin[ v. Colvin</u>, 778 F.3d

16

842,] 848 [(9th Cir. 2015)]. For example, Zavalin explained that a cashier may be confronted with varying situations in the course of "reconciling the cash on hand against the cash registers tape and issuing credit memorandums to customers." Id.

On the other hand, the ALJ's reference to an "environment with few workplace changes" concerns broader revisions to the workplace environment. The applicable regulation explains that performance of a job often requires "[d]ealing with changes in a routine work setting," so the inquiry into whether a claimant has an impairment that limits the ability to do basic work activities involves considering to what extent the claimant is able to adapt to changes in the "work setting." 20 C.F.R. § 404.1522(b)(6). As the Supreme Court has explained in another context, "[t]he workplace includes those areas and items that are related to work and are generally within the employer's control." O'Connor v. Ortega, 480 U.S. 709, 715 (1987). The workplace environment or setting would generally include, for example, the location or physical surroundings of the area where the worker's duties are performed. See, e.g., Popa v. Berryhill, 872 F.3d 901, 903 (9th Cir. 2017) (discussing record evidence indicating that the claimant was able to "be aware of normal hazards in the work place, and respond appropriately to changes in the work place setting").

By way of example, the Supreme Court in O'Connor referenced a hospital and described the "hallways, cafeteria, offices, desks, and file cabinets" as "all part of the workplace." Id. at 716. Changes to the workplace setting itself – such as requiring workers to work in a different area of the workplace each day or to travel to different locations for each shift – are distinct from "*situational variables*" in the tasks being performed. Zavalin, 778 F.3d at 848 (emphasis added).

Considering the distinction between "an environment with few workplace changes" and "few variables" in the work to be performed, there was no apparent conflict for the ALJ to resolve between the testimony of the vocational expert and the DOT. See Zavalin, 778 F.3d at 846.

Stiffler, 102 F.4th at 1109-1110; see also Clifford E. v. O'Malley, No. 1:23CV704, 2024 WL 3105669 (M.D.N.C. June 24, 2024) (adopting Stiffler analysis); Ricky F. v. O'Malley, No. 1:23CV720, 2024 WL 4333136 (M.D.N.C. Sept. 27, 2024) (same); Stephen G. F. v. O'Malley, No. 2:22CV2006, 2024 WL 1051808, at *5-6 (D. Nev. Mar. 11, 2024) ("[Courts] do not mechanically match words from the ALJ's limitation to a given reasoning level. Thus, the fact

that the ALJ used the phrase 'occasional changes in the workplace' in his limitation does not automatically limit Plaintiff to reasoning level 1 jobs simply because reasoning level 1 uses the word 'occasional.' . . . The ultimate question is whether a person who is limited to only dealing with 'occasional changes in the workplace' is precluded from carrying out the functions of a job that may require dealing with 'a few concrete variables.' The cases [reviewed by the court] suggest the answer is 'no.' As a result, there was no need for additional questioning of the VE. In turn, the ALJ's acceptance of the VE's testimony was appropriate because there was no apparent conflict[.]").

Based on that analysis, Plaintiff has failed to demonstrate that an apparent conflict exists between jobs with a Reasoning Level 2 and a limitation to no more than "occasional workplace changes." the Court finds that Plaintiff fails to demonstrate the existence of an unresolved apparent conflict at step five of the sequential analysis. As such, her second contention, like her first, provides no basis for remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #10] is DENIED, that Defendant's Dispositive Brief [Doc. #11] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 27th day of March, 2025.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge